**Reversed in part, Affirmed in part, Rendered, Remanded, and Opinion filed April 2, 2020.**



In the

# Fourteenth Court of Appeals

### NO. 14-18-00600-CR

### PHI VAN DO, Appellant

v.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 10
Harris County, Texas
Trial Court Cause No. 2130699**

### OPINION

Appellant Phi Van Do appeals his conviction of the Class A misdemeanor of driving while intoxicated (DWI) with an alcohol concentration of 0.15 or more at the time the analysis was performed. *See* Tex. Penal Code Ann. § 49.04(a), (d). During punishment, the trial court made the finding that appellant's breath showed an alcohol concentration level of at least 0.15 at the time the analysis was performed. *See id.* § 49.04(d). The trial court assessed punishment at a $250 fine and one-year

confinement in the Harris County Jail, but suspended the sentence, and placed appellant on community supervision for one year and imposed a $250 fine. *See id.* § 12.21; Tex. Code Crim. Proc. Ann. art. 42A.053(a)(1).

Appellant raises five issues. In his first issue, he argues that there was no valid charging instrument in his case because he was not indicted by a grand jury. In his second issue, appellant contends that the complaint supporting the information was invalid because the affiant only initialed and did not sign the complaint. In his third issue, appellant argues that the trial court erred by treating an element of the offense of Class A misdemeanor DWI as a punishment enhancement. In his fourth issue, appellant argues the trial court's determination that he had a heightened alcohol concentration violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Finally, in his fifth issue, appellant contends that the trial court failed to make a statutorily required ability-to-pay determination at sentencing.

We overrule appellant's first and second issues, sustain his third and fourth issues, and do not reach his fifth issue. Therefore, we reverse the trial court's judgment in part, affirm the judgment in part, render judgment that appellant is convicted of Class B misdemeanor DWI instead of Class A misdemeanor DWI, and remand the case for further proceedings limited to a new punishment hearing. *See* Tex. R. App. P. 43.2(a), (c), (d).

## I. BACKGROUND

Appellant was charged by information with the offense of unlawfully operating a motor vehicle on or about January 9, 2017, in a public place while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a). The information further alleged that an analysis of a specimen of appellant's breath showed an alcohol concentration level of at least 0.15 at the time the analysis was performed. *See id.* § 49.04(d).

2

During appellant's arraignment, the State did not read the portion of appellant's information that alleged the at-least 0.15 alcohol concentration level. Appellant pleaded not guilty.

Viewed in the light most favorable to the conviction, there was evidence that appellant was speeding and caused a red-light collision at a busy intersection. At the scene, he smelled like alcohol; used "slurred speech"; had red, glassy eyes; and admitted he had been drinking beer.

Officer Guerra with the Houston Police Department (HPD) transported appellant to the HPD Central Intoxilyzer station. At "Central Intox," appellant underwent the one-leg-stand and the walk-and-turn standardized field sobriety tests. He failed both tests. Appellant consented to giving, and a DWI technician with the City of Houston tested, a breath sample. According to the technician, appellant was intoxicated.

A Department of Public Safety (DPS) technical supervisor responsible for maintenance and monitoring reported that the Intoxilyzer used to test appellant's breath was functioning properly. The supervisor stated that appellant's results of 0.194 grams per 210 liters of breath and 0.205 grams per 210 liters of breath were within the allowed tolerance and were greater than Texas's 0.08 grams per 210 liters of breath legal limit of intoxication.

The jury charge included the following abstract and application paragraphs:

### THE LAW ON DRIVING WHILE INTOXICATED

A person commits an offense the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place.

To prove that the defendant is guilty of driving while intoxicated, the State must prove, beyond a reasonable doubt, three elements:

1. The defendant operated a motor vehicle: and

3

2. The defendant did this in a public place; and

3. The defendant did this while intoxicated.

The State has alleged intoxication by not having the normal use of mental or physical faculties by reason of the introduction of alcohol or by having an alcohol concentration of .08 or more.

. . . .

## APPLYING THE LAW TO THIS CASE

You must determine whether the State has proved three elements beyond a reasonable doubt which are as follows:

1. The defendant, PHI VAN DO, operated a motor vehicle in Harris County, Texas, on or about JANUARY 9th, 2017:

2. in a public place;

3. while intoxicated by not having the normal use of his mental faculties due to the introduction of alcohol; by not having the normal use of his physical faculties due to the introduction of alcohol; or by having a[n] alcohol concentration of .08 or higher.

You must all agree on elements 1, 2, and 3 listed above but you do not have to agree on the method of intoxication listed above.

If you all agree the State has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2, and 3 listed above, you must find the defendant "not guilty."

If you all agree the State has proved, beyond a reasonable doubt, each of the three elements listed above then you must find the defendant "guilty."

In addition, the charge included the following pertinent definitions:

*Intoxicated*

"Intoxicated" means either (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body or having an alcohol concentration of .08 or more.

*Alcohol Concentration*

"Alcohol Concentration" means the number of grams of alcohol per

4

100 milliliters of blood.[1]

The jury returned a verdict of guilty.

Appellant elected to have the trial court assess his punishment. During punishment proceedings, the following exchange took place:

> [STATE]: At this time, the State would like to allege—further allege the .15 allegation. So it is fair to allege that an analysis of a specimen of the defendant's breath showed an alcohol concentration level of at least 0.15 at the time the analysis was performed.
>
> THE COURT: Any objection from the defense?
>
> [DEFENSE COUNSEL]: Your Honor, that element was not presented to the jury for their consideration as part of deliberations. We would object to the enhanced element at this time. They tried it as a loss of use case.
>
> THE COURT: Any response?
>
> [STATE]: The response from the State is that it's a punishment element. It wasn't a [sic] element of the actual offense. We did have evidence that the analysis of the breath was above a .15. We tried it as—all three were able to prove intoxication and the BAC actually came out at trial.
>
> THE COURT: The objection is overruled. The Court finds the enhancement to be true.

No new evidence was offered during this phase.

The trial court sentenced appellant to one-year confinement in the Harris County Jail and a $250 fine, suspended to one-year community supervision and the imposition of a $250 fine.

---

[1] A different definition applies when the alcohol concentration is based on breath, not blood. *See* Tex. Penal Code Ann. § 49.01(1)(A). Appellant did not object at trial and does not raise any instruction error on appeal.

## II. ANALYSIS

### A. Appellant's charging instrument

In his first issue, appellant challenges whether he can be "held to answer for the criminal offense of which he was convicted" (a Class A misdemeanor) and sentenced to both punishment by fine and punishment by confinement in jail when he was charged by information instead of being indicted by a grand jury. Appellant relies on article I, section 10, of the Texas Constitution.[2]

As appellant acknowledges, there is binding precedent to the contrary. *See Peterson v. State*, 204 S.W.2d 618, 618 (Tex. Crim. App. 1947) (op. on reh'g) (rejecting appellant's "contention that because both [fine and imprisonment] may be assessed he can only be charged by indictment of a grand jury" based on language of section 10 of article I of Texas Constitution).[3]

We overrule appellant's first issue.

### B. Appellant's complaint

In his second issue, appellant argues that the complaint in his case is invalid because, although it is signed, the signature consists of just initials. Accordingly, the complaint does not reveal the identity of the signer. *See* Tex. Code Crim. Proc. Ann.

---

[2] Article I, section 10, in pertinent part provides:

> [N]o person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger.

Tex. Const. art. I, § 10.

[3] *Cf.* Tex. Code Crim. Proc. Ann. art. 12.02(a) (statute of limitations for presenting indictment *or* information for any Class A or Class B misdemeanor is two years from date of commission of offense); *State v. Drummond*, 501 S.W.3d 78, 82 (Tex. Crim. App. 2016) (information "can be used to charge a defendant with any misdemeanor offense").

art. 21.22 ("No information may be presented until affidavit has been made by some credible person charging the defendant with an offense."). Appellant further argues that because there is no evidence the complaint was signed by a credible person, the presentment of the information was erroneous, the trial court never obtained jurisdiction of the cause, and his conviction is void.

The Texas Constitution provides that "[t]he presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Tex. Const. art. V, § 12(b). That is, "under the explicit terms of the constitution itself, the mere presentment of an information to a trial court invests that court with jurisdiction over the person of the defendant, regardless of any defect that might exist in the underlying complaint." *Aguilar v. State*, 846 S.W.2d 318, 320 (Tex. Crim. App. 1993) (discussing 1985 amendment to Tex. Const. art. 5, § 12(b)). Because "they are no longer jurisdictional in the traditional sense," defects in an information or underlying complaint, whether of form or substance, must be raised before trial in a motion to set aside the information or else they are waived. *Ramirez v. State*, 105 S.W.3d 628, 630 (Tex. Crim. App. 2003) (defect in information (citing *Aguilar*, 846 S.W.2d at 318, 320)); *Aguilar*, 846 S.W.2d at 320 (defect in complaint (internal quotation marks omitted)). Appellant does not dispute that the information was presented to the trial court.

Code of Criminal Procedure article 1.14(b), entitled "Waiver of rights," provides:

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance

7

with Article 28.01 of this code.

Tex. Code Crim. Proc. Ann. art. 1.14(b); *see also* Tex. Code Crim. Proc. Ann. art. 28.10 ("Amendment of indictment or information"). The legislature intended the constitutional provision and the statutes to work together. *Teal v. State*, 230 S.W.3d 172, 176–77 (Tex. Crim. App. 2007) (citing article V, section 12(b), and articles 1.14(b) and 28.10). In other words, an information once presented invokes the jurisdiction of the trial court, regardless of any defect. *See id.* at 176. And the defendant must object to any error in the information before trial and certainly before the jury is empaneled, or else the complaint is waived. *See id.* at 177, 182; *see also Jenkins v. State*, 592 S.W.3d 894, 902–03 (Tex. Crim. App. 2018) (discussing *Teal*).

Having been presented with the information, the trial court was vested with jurisdiction of the cause and over appellant. *See* Tex. Const. art. V, § 12(b); *Teal*, 230 S.W.3d at 176; *Aguilar*, 846 S.W.2d at 320. Appellant acknowledges that he raised no objection to the complaint or the information prior to trial. He therefore failed to preserve any defect in the complaint or information. *See* Tex. Code Crim. Proc. Ann. art. 1.14(b); *Jenkins*, 592 S.W.3d at 902–03; *Teal*, 230 S.W.3d at 182; *Ramirez*, 105 S.W.3d at 630; *Aguilar*, 846 S.W.2d at 320.

We overrule appellant's second issue.

## C. The trial court's error in determining the at-least 0.15 element of Class A misdemeanor DWI at punishment

Appellant argues that the trial court erred in convicting him of a Class A misdemeanor DWI when the question of whether his alcohol concentration was 0.15 or higher was never submitted to the jury. We agree. Section 49.04(a) of the Penal Code provides: "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a). A DWI offense is ordinarily a Class B misdemeanor. *Id.* § 49.04(b). However, section

8

49.04(d) provides: "If it is shown on the trial of an offense under this section that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed, the offense is a Class A misdemeanor." *Id.* § 49.04(d).

In *Navarro v. State*, our court held "that a person's alcohol concentration level is not a basis for enhancement" but "is instead an element of a separate offense because it represents a specific type of forbidden conduct—operating a motor vehicle while having an especially high concentration of alcohol in the body." 469 S.W.3d 687, 696 (Tex. App.—Houston [14th Dist.] pet. ref'd); *see* Tex. Penal Code Ann. § 49.04(a), (d); *Castellanos v. State*, 533 S.W.3d 414, 418–19 (Tex. App.—Corpus Christi 2016, pet. ref'd) (discussing *Navarro* and holding same); *cf. Taylor v. State*, 572 S.W.3d 816, 822 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (affirming Class A misdemeanor DWI conviction when "jury found that appellant drove with an alcohol concentration of more than 0.15").

In his third issue, appellant argues that the trial court erred in convicting him of Class A misdemeanor DWI when the question of whether his alcohol concentration was 0.15 or higher was never submitted to the jury and the trial judge instead made such finding during punishment. Appellant argues that "no person may be convicted of an offense unless each element of the offense is proven beyond a reasonable doubt."[4] Alternatively, in his fourth issue, appellant contends that the trial

---

[4] *See* Tex. Code Crim. Proc. Ann. art. 38.03 ("Presumption of innocence"). "Even though the presumption of innocence is guaranteed by a Texas statute, the statute itself arises from a constitutional guarantee, that of a fair and impartial trial." *Miles v. State*, 154 S.W.3d 679, 681 (Tex. App.—Houston [14th Dist.] 2004) (citing U.S. Const. amend. XIV and Tex. Code Crim. Proc. Ann. art. 38.03), *aff'd*, 204 S.W.3d 822 (Tex. Crim. App. 2006); *see Hurst v. Florida*, 136 S. Ct. 616, 621 (2016) ("This [Sixth Amendment] right [to trial by impartial jury], in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable doubt."); *Coffin v. United States*, 156 U.S. 432, 453 (1895) (presumption of innocence is "axiomatic and elementary").

9

court's finding of a heightened alcohol concentration violated his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process as set out in *Apprendi*, 530 U.S. at 494, because "the required finding expose[d him] to a greater punishment than that authorized by the jury's guilty verdict."[5] Appellant argues that no harm analysis is required.

The State agrees that under *Navarro* the 0.15-or-greater alcohol-concentration element in subsection (d) is an essential element of the Class A misdemeanor DWI offense which must be proved to the jury at the guilt/innocence phase of trial. 469 S.W.3d at 696; *see* Tex. Penal Code Ann. § 49.04(d). The State acknowledges "[t]hat procedure was not followed in this case" and that "the jury was charged on regular Class B [misdemeanor] DWI, and the trial court and prosecutor treated the issue as a punishment enhancement for the trial court to find during the punishment phase." The State also acknowledges that "the failure to submit an element to the jury is constitutional" error but contends the error was harmless beyond a reasonable doubt.

When preserved, the harmless-error standard we apply "for most erroneous charges is that 'the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant'; in other words, unless the appellant suffered 'some harm.'" *Jimenez v. State*, 32 S.W.3d 233, 237 (Tex. Crim. App. 2000) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). However, as here, when the charge error concerns "a violation of the federal constitution that did not amount to a structural defect, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.*; *see Neder v. United States*, 527 U.S. 1, 15 (1999) (test for determining whether constitutional error is harmless is whether it appears "beyond a reasonable doubt that the error

---

[5] In a footnote, appellant also argues that he was the recipient of an illegal sentence.

complained of did not contribute to the verdict obtained" (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)); *Williams v. State*, 273 S.W.3d 200, 225 (Tex. Crim. App. 2008) ("Preserved jury charge error is evaluated under *Almanza*'s 'some harm' standard unless we determine that the error is constitutional in nature, in which case the 'beyond a reasonable doubt harmless' standard would apply."); *see also* Tex. R. App. P. 44.2(a) (reversible constitutional error in criminal cases).

## D. Not harmless beyond a reasonable doubt

"There is no set formula for conducting a harm analysis that necessarily applies across the board, to every case and every type of constitutional error." *Snowden v. State*, 353 S.W.3d 815, 822 n.31 (Tex. Crim. App. 2011). However, the Texas Court of Criminal Appeals in *Niles v. State*, 555 S.W.3d 562 (Tex. Crim. App. 2018), provided certain guidelines for our analysis. The *Niles* court specifically pointed to the harmless-error analysis in *Neder*. *See* 555 S.W.3d at 572. The *Neder* Court stated: "[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." 527 U.S. at 17. The *Neder* Court further stated:

> Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless. A reviewing court making this harmless-error inquiry does not, as Justice Traynor put it, "become in effect a second jury to determine whether the defendant is guilty." [R.] Traynor, [The Riddle of Harmless Error] 21 [(1970)]. Rather a court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted

11

element.

*Id.* at 19. In addition, the *Niles* court noted that other state appellate courts "ask[] whether the element not included in the instructions was inherent in the elements that the jury did find." 555 S.W.3d at 572. The *Niles* court also stated: "If the missing element was logically encompassed by the guilty verdict and was not in fact contested, the error was considered harmless." *Id.* (citing *United States v. Stanford*, 823 F.3d 814, 832 (5th Cir.) (discussing *Neder*), *cert. denied*, 137 S. Ct. 453 (2016)).

Regardless of which formulation of harmless error we use, we cannot conclude that the error here was harmless beyond a reasonable doubt. The State contends the error was harmless because "[o]ther than the breath test, the State's evidence of intoxication was weak" and "the verdict shows that the jury believed the breath test results." However, considering all the trial evidence, there was certainly other evidence tending to show appellant was intoxicated aside from his breath-test results. For example, the driver and passenger of the vehicle appellant hit testified regarding how appellant was driving "really fast" behind them when they were stopped at a red light and "pushed [them] far" into the intersection. The passenger testified that appellant "had a smell of alcohol." According to the officer who responded to the scene, appellant had "slurred speech," smelled like alcohol, had red, glassy eyes, and said he previously drank (at least) two alcoholic beverages or beers. There was evidence that appellant failed both standardized field sobriety tests administered to him at Central Intox and that such tests are reliable ways to test for physical or mental impairment.

We consider that the State did not solely rely on the objective, or "per se," theory of intoxication based on appellant's having an alcohol concentration of 0.08 or more. The jury charge also included the subjective, or "impairment," theory of intoxication. The abstract and application paragraphs stated that the State alleged

12

and the jury was to determine whether the State proved the element of intoxication by way of appellant's not having the normal use of his mental or physical faculties due to the introduction of alcohol. *See Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010) (per se and impairment intoxication theories are not mutually exclusive and can be submitted to jury if there is some evidence that would support both definitions).

We also consider that jury unanimity is not required as to one or the other theory (per se or impairment) for the State to prove intoxication. *See* Tex. Penal Code Ann. § 49.01(2) ("Intoxication"); *Bagheri v. State*, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003) ("[T]he definitions contained in § 49.01 set forth alternate means by which the State may *prove* intoxication, rather than alternate means of *committing* the offense."); *Bradford v. State*, 230 S.W.3d 719, 722 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[J]ury unanimity on one or the other theory, impairment or per se, is not required for the State to prove intoxication."). In other words, the jury could convict appellant based on either the per se theory, the impairment theory, or some combination of both theories. The jury did not have to believe the breath-test results in order to convict appellant of DWI. The jury instead could have believed the evidence tending to show appellant's loss of normal mental or physical faculties. We therefore disagree with the State's contention that "[i]f the jury had disbelieved the test result, it would have acquitted" and "[t]he jury's finding of guilt is a finding it believed the test result."

Nor do we agree with the State that "[t]he jury's finding of intoxication renders a positive finding on the .15 element a foregone conclusion." Appellant's breath-test results did not go uncontested. Appellant's defense counsel elicited testimony from the DWI technician that during the 15-minute observation period before the breath test, appellant was speaking clearly and coherently. The technician

expressly agreed that highly intoxicated people would not present mannerisms and speech patterns like appellant did in the video. Defense counsel also elicited testimony from the DPS supervisor regarding how she provided two sworn statements concerning appellant's breath test that were factually inconsistent and stated different starting times for the "operational systems check"[6] for appellant's test. The supervisor agreed with defense counsel that such tests are "highly scientific"; she is "really concerned about how the machines are operated and the timeliness"; and that "if anything is incorrect or erroneous, it would make the test invalid."

During closing arguments, defense counsel first submitted to the jury that the breath-test results were inadmissible. In addition, however, he argued:

> But I will submit to you, you saw how they were skewed. I asked the— when she came in to testify, I said, okay, when was the test was taken? The test was taken at midnight, 000. Well, why did you swear off this other affidavit that said it was taken at 11:55? Makes the test erroneous. That's a reasonable doubt. The pieces of the puzzle, you remember the State used a puzzle. They don't fit, ladies and gentlemen. So that's reasonable doubt. . . . So there's also this disconnect. Y'all heard him talking to the officers and his speech wasn't slurred. He was in tune with time and place. He talked about how the store next to his store got robbed and everything was clean and clear and that's evidence that there's something wrong with this test. You don't get a 19 or a 2-0 and then have somebody evidence clear speech. That's an undisputable conflict. That's reasonable doubt.

We also consider what was (or was not) before the jury regarding the 0.15 alcohol-concentration element of Class A misdemeanor DWI. *See* Tex. Penal Code Ann. § 49.04(d). According to appellant, the State effectively abandoned the Class A misdemeanor DWI offense during trial. Voir dire included no discussion of the

---

[6] The supervisor explained that this check involves "testing temperatures, voltages, internal standards."

0.15 element. During appellant's arraignment, the State did not read the portion of the information alleging the 0.15 element. Although the DPS supervisor testified that appellant's breath-test results were "greater" than the 0.08 "legal limit of intoxication," no testimony highlighted or explained that a 0.15 alcohol concentration is a requisite threshold reading for purposes of meeting the higher level of Class A misdemeanor DWI offense. Nor did the State include in its closing any discussion of the 0.15 element. When discussing the test results, the State argued that appellant's valid test results of 0.194 and 0.205 were "over double the legal limit," referring of course to the 0.08 alcohol-concentration level of regular Class B misdemeanor DWI. *See* Tex. Penal Code Ann. §§ 49.01(2)(B), 49.04(a), (b). As discussed above, the guilt/innocence charge did not instruct the jury regarding the 0.15 element or request a finding on the 0.15 element; the State acknowledges that it instead treated the issue as a potential enhancement for the trial court to determine at the punishment phase of the trial.

Finally, we consider appellant's sentence. The record indicates that appellant elected to have the trial court assess his punishment. The trial court erred by sentencing appellant to one-year county-jail confinement, after considering the 0.15 element as an enhancement during the punishment phase, without allowing the jury to consider the 0.15 element during the guilt/innocence phase of the trial. In other words, based on the enhancement finding, the trial court applied a range of punishment applicable to a Class A misdemeanor, instead of a Class B misdemeanor. *Compare id.* §§ 12.22 (Class B misdemeanor punishable by fine not to exceed $2,000, jail confinement not to exceed 180 days, or both), 49.04(a), (b) (Class B misdemeanor DWI), *with id.* §§ 12.21 (Class A misdemeanor punishable by fine not to exceed $4,000, jail confinement not to exceed one year, or both), 49.04(d) (Class A misdemeanor DWI). Indeed, the trial court assessed the maximum jail

confinement for a Class A misdemeanor DWI.

Lacking knowledge beyond a reasonable doubt that the jury unanimously found the intoxication element based on the per se theory, we cannot conclude that the additional 0.15 element of Class A misdemeanor DWI was either inherent in the elements the jury found or logically encompassed by its guilty verdict. *See Niles*, 555 S.W.3d at 572. Under these circumstances, we cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the constitutional error. *See Neder*, 527 U.S. at 19; *Niles*, 555 S.W.3d at 572.

We sustain appellant's third and fourth issues.

## E. Remedy

Here, appellant was convicted of and sentenced under the punishment range for a Class A misdemeanor DWI, but the jury was charged and returned a guilty verdict based on the elements of a Class B misdemeanor DWI. *See* Tex. Penal Code Ann. §§ 12.21, 12.22, 49.04(a), (b), (d). Appellant does not dispute that the State proved the offense of DWI under subsection (a), a Class B misdemeanor. *See id.* § 49.04(a), (b); *Ex parte Navarro*, 523 S.W.3d 777, 780 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (Class B misdemeanor is lesser-included offense of Class A misdemeanor DWI); *see also Britain v. State*, 412 S.W.3d 518, 521 (Tex. Crim. App. 2013) (appellate court may render judgment of conviction for lesser-included offense when there is proof beyond reasonable doubt of all elements of lesser-included offense).

## III.   CONCLUSION

Accordingly, we reverse the trial court's judgment in part as to the third and fourth issues, affirm the judgment in part as to the first and second issues, render judgment that appellant is convicted of Class B misdemeanor DWI instead of Class

16

A misdemeanor DWI, and remand the case for further proceedings limited to a new punishment hearing.[7] *See* Tex. R. App. P. 43.2(a), (c), (d).

/s/    Charles A. Spain
        Justice

Panel consists of Justices Christopher, Spain, and Poissant.
Publish — Tex. R. App. P. 47.2(b).

---

[7] Because we remand for the trial court to reassess punishment and resentence appellant in accordance with the judgment as rendered by this court, we need not reach appellant's fifth issue, which concerns whether the trial court failed to follow certain articles in chapter 42 of the Code of Criminal Procedure in conjunction with appellant's sentencing. *See* Tex. R. App. P. 47.1.